IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUE ELLEN BOOTH, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 05-1698 |
| | ) | Judge Terrence F. McVerry |
| COMMISSIONER OF SOCIAL | ) | Magistrate Judge Robert C. Mitchell |
| SECURITY, | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

I.    Recommendation

It is respectfully recommended that the motion for summary judgment submitted on behalf of the defendant (Docket No. 14) be denied.  It is further recommended that the motion for summary judgment submitted on behalf of the plaintiff (Docket No. 12) be granted and that this case be remanded to the Commissioner of Social Security for further consideration.

II.    Report

Plaintiff, Sue Ellen Booth, brings this action pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), for review of the Commissioner's final determination disallowing her claim for a period of disability or for disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423.

Presently before this Court for disposition are cross-motions for summary judgment.  For the reasons that follow, Defendant's motion for summary judgment should be denied, Plaintiff's motion for summary judgment should be granted and this case should be remanded to the Commissioner for further consideration.

Plaintiff filed an application for benefits on April 7, 2004, alleging disability as of March 6, 2003 due to migraine headaches, pain, diabetes, asthma, high blood pressure, vision problems, severe fatigue and depression. (R. 171-73.) The application was denied on May 20, 2004 (R. 130-34). On July 15, 2004, Plaintiff requested a hearing (R. 137-44) and hearings were held before an Administrative Law Judge (ALJ) on March 4, 2005, May 11, 2005 and July 7, 2005 (R. 29-127). In a decision dated August 8, 2005, the ALJ denied benefits (R. 10-19). Plaintiff requested reconsideration on August 29, 2005 (R.9). Upon reconsideration and in a decision dated October 3, 2005, the Appeals Council affirmed the prior determination (R. 6-8). On December 12, 2005, the instant complaint was filed.

Ordinarily, the issue before a district court in reviewing a Social Security case is whether there is "substantial evidence to support the decision of the Commissioner." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted). See 42 U.S.C. § 405(g). However, the Commissioner also has the related duty to develop an appropriate record from which the determination can be made. Plaintiff argues, inter alia, that the ALJ did not develop an adequate record. In addition, "Social Security proceedings are inquisitorial rather than adversarial." Sims v. Apfel, 530 U.S. 103, 111 (2000). In this case, the hearing became increasingly adversarial and Plaintiff was not accorded a full and fair hearing.

On March 4, 2005, Plaintiff appeared with her attorney, Ronald Russell, for a hearing before ALJ Douglas W. Abruzzo. Unfortunately, Mr. Russell's car broke down on the way and the hearing, scheduled to begin at 9:00 a.m., did not begin until 9:30. The ALJ decided to order a continuance (Plaintiff did not request it) so that Plaintiff and the other claimants scheduled for hearings on that day could be given adequate time. (R. 29-34.)

2

On May 11, 2005, Plaintiff appeared again with Mr. Russell for a hearing and she began to offer testimony.  As the testimony progressed, however, the ALJ noted certain items that were not in the record that he felt were necessary for him to make a decision.  (R. 54, 60, 65, 69.) Finally, he made this statement:

> Counselor, I think we have so much in the way of medical records that we need to obtain that I would be very uncomfortable with continuing the hearing at this time.  We need medical records from Dr. Lowden for – since October 6, 2004, we need a referral to a psychologist or psychiatrist, preferably probably a psychiatrist who can consider the medical aspects of the diabetes, okay?  We need a referral to an ophthalmologist.  I need to see something in the way of pulmonary function test and oxygen saturations.  I need to find out what kind of hernia this thing is that she has mentioned.  I need to have something showing she has herniated discs....

(R.70.)[1]  The ALJ indicated that he needed to see an MRI of Plaintiff's neck, noting that he believed it was possible that her herniated discs were pressing on a nerve and causing her severe headaches.  (R. 70-71, 75.)

Mr. Russell moved for a continuance and the ALJ ordered that he would reschedule the hearing and hold the record open for 90 days.  (R. 73-74.)  He explained to Plaintiff that it was necessary to take this action so that he would have a complete record from which to make a decision:

> Okay.  I'm sorry this is taking too long, but the bottom line is that I think it needs to be right, okay?  If I rule today that you're not disabled, and you apply again, my ruling is going to affect the timeframe that another Judge can look at, okay?  So, we need to do it right, okay?

(R. 75.)

On July 7, 2005 (57 days after the previous hearing), another hearing was held.  The ALJ

---

[1]     Dr. Patrick Lowden is Plaintiff's treating physician.  (R. 52.)

indicated that he had received an x-ray report dated June 30, 2005 and a letter from Dr. Lowden dated July 1, 2005. (R. 79-80.) Mr. Russell asked Plaintiff about obtaining a psychological report and she testified that she had tried to get one but discovered that her insurance would not cover it. (R. 81-82.) She also stated that she had obtained an appointment to be seen at a pain clinic for an evaluation on July 14, 2005. (R. 82.) She indicated that an eye doctor had told her that her blurry vision was caused by her circulation problems from the diabetes and that Dr. Lowden had told her that a recent condition of swollen feet was also a circulation issue. (R. 84-85.)

Plaintiff's mother, Ellen Harold, then took the stand to testify about what she had observed as to her daughter's condition. When she attempted to describe her daughter's headaches, the ALJ interrupted her to say "You didn't personally experience that because you're not inside her head, right?" (R. 98; see also R. 92.) He also "struck" the phrase "asthma attacks" from a question Mr. Russell asked Ms. Harold about her daughter's use of an inhaler. (R. 102.)

Eugene Hoffman, the vocational expert (VE), then took the stand. The ALJ had him categorize Plaintiff's prior employments and had him answer hypothetical questions about the existence of jobs that someone with certain limitations could perform. (R. 103-11.) Mr. Russell attempted to clarify the VE's testimony about the amount of time an individual could be "off task" and still be able to engage in substantial gainful activity, but the ALJ interrupted him to present his understanding of what the VE had said (which the VE confirmed). (R. 112-14.) When Mr. Russell attempted to ask again, the ALJ said "Okay. Dead subject, move on" and overruled Mr. Russell's objection. (R. 114.)

Mr. Russell then attempted to ask the VE an additional hypothetical, a typical procedure

4

in a hearing of this nature.[2]  However, the ALJ ruled that Mr. Russell's question was subsumed

within his prior hypothetical.  (R. 115.)  Mr. Russell attempted to ask the VE where he had

obtained some of the numbers for jobs he had mentioned and the ALJ again interrupted to offer

his understanding about what the VE had said.  (R. 117.)  When Mr. Russell objected, the ALJ

replied "I'm the Judge, I get to put words in his mouth, okay?"  (R. 118.)

Mr. Russell attempted to ask the VE another hypothetical, and the ALJ ruled that it was

an "improper question" because he had already accounted for various limitations within his

hypothetical.  (R. 119.)  The following exchange then occurred:

> ATTY:      I would have more questions, but since I cannot develop the
> questions under the rules of the Judge, I finish.
>
> ALJ:        Don't give me that stuff, counselor.
>
> ATTY:      I finish my thing and I protest – and I lodge an objection your
> ruling is limiting my ability to cross-examine this witness.
>
> ALJ:        Stop with the nonsense.
>
> ATTY:      We're done.
>
> ALJ:        Counselor.  Okay.  Fine, as long as you say we're done.
>
> ATTY:      I'm done.
>
> ALJ:        We're done.
>
> ATTY:      You won't let me finish.
>
> ALJ:        No, that's not true, counselor.  And you're trying to create a
> problem here and I'm not going to allow you to do it.  Now, you can ask any
> question you want to, but I am going to overrule some of them, okay?  And I'm

---

[2]      In making a determination regarding disability, the ALJ is required to accept only those
hypotheticals that accurately reflect a claimant's limitations.  Allen v. Barnhart, 417 F.3d 396,
405 (3d Cir. 2005).

going to say they are improper questions.  Now, if you want to quit in your little fit of [pique] right now, that's perfectly okay, but it's your claimant who is going to suffer the consequences.

ATTY:          I have no further questions.

(R. 120-21.)

The ALJ then inquired if Mr. Russell had any further evidence that he wished to offer.

Mr. Russell noted that he wished to obtain the records after Plaintiff went to the pain clinic on

July 14 and stated that, since Plaintiff could not afford to develop the psychological aspect of her

case, he was requesting a psychological consult.  The ALJ responded as follows:

> Okay.  She can do that on her next claim.  This claim has been in existence since April of 2004.  Okay?  We had a hearing scheduled in March of 2005 at which time counsel appeared 25 minutes late.  I continued the hearing.  We had another hearing [on] May 11, 2005, at which time I granted a continuance for medical development.  There has been very little in the way of effort performed for medical development.  It appears to me that there is a deliberate attempt to prolong this case.  I'm not going to have it.  So, now, Ms. Booth, as you well know, has the right to file another application at any time, all right?  In the mean time, you may take this ruling to the Appeals Council, and if they tell me to have another hearing and continue this case even further, then I will do that.  If they don't specifically tell me to do it, I won't do it, okay?

(R. 121-22.)  Mr. Russell explained that his car had broken down and that was why he was late

for the first hearing.  He stated that his client's inability to afford the mental health development

of her case should not be held against her.

The ALJ responded as follows:

> Yeah, that's correct, counsel.  Although, as well experienced counsel fully knows, he could have asked for a CE back [illegible] or however many days it is, okay?  But, chose not to.  He could have been in contact with his client and had her promptly attempt to get medical appointments, which he apparently did not.  And had she promptly attempted to get the medical development, then counsel could have requested CE's as he well knows.  Since he chose not to do that, my view is that there is an attempt to carry out this case and delay and I'm not going to have it.

6

(R. 122.)

Finally, the ALJ announced that he was closing the record and that there would be no post-hearing development, even to receive the record from the pain clinic. He turned to Plaintiff and told her that:

> you have the right to file another application. However, this application has been on file for well over a year, and I believe it's time to close the record on this case. If you have new evidence that develops in the next week, okay? You have the right to file an additional application, and you also have the right to send that new evidence on to the Appeals Council, if indeed you take an appeal in this case, okay? So, notwithstanding a great deal of talk about how I'm cutting off your rights, much of your rights remain in effect, okay?

(R. 123-24.)

"ALJs have a duty to develop a full and fair record in social security cases." Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995). The ALJ did not explain why he was closing the record on July 7, 2005 when he had previously indicated that it would remain open for 33 more days. He did not explain why the referrals and examinations that he stated on May 11, 2005 were vital to his ability to decide the case on a fully-developed record were no longer necessary. He did not explain the discrepancy between his statement on May 11, 2005 that denying Plaintiff's claim would have an effect on her ability to file a new application and his statement on July 7, 2005 that she was free to file a new application and that "much of [her] rights remain in effect."

With respect to the issue of the consultative exams (CE's), the ALJ erred. He was the one who decided that five expensive referrals and examinations were necessary to complete the record, but he did not schedule a CE, even though Plaintiff testified that she had no income and that her insurance would not cover the psychological exam (R. 43, 81-82). A Social Security regulation requires the Administration to develop a complete record of a claimant's medical

history. 20 C.F.R. § 404.1512(d). The regulation then specifically states that "If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense." 20 C.F.R. § 404.1512(f). Thus, the evidence demonstrates that the ALJ did not adequately develop the record and the case should be remanded for further consideration.

In addition, as outlined above, the ALJ acted in a manner hostile to Mr. Russell and ultimately to Plaintiff. This provides an additional basis for remand. See Ventura, 55 F.3d at 904 (describing how an ALJ's "offensive and unprofessional conduct" prevented the claimant from receiving a fair hearing). In Ventura, the court noted that:

> even if the record was totally devoid of evidence supporting a finding of disability, "the bias of the adjudicator might still be a ground for setting aside the determination adverse to the claimant, for we have repeatedly held that in Social Security disability claim hearings the [ALJ] has an affirmative obligation to assist the claimant in developing the facts."

Id. (quoting Hummel v. Heckler, 736 F.2d 91, 95 (3d Cir. 1984)).

In this case, the ALJ repeatedly interrupted Plaintiff's mother and Mr. Russell, overruled questions counsel tried to ask the VE and inexplicably closed the record 33 days before he had previously indicated he would. When counsel tried to have the record further developed, the ALJ dismissed the request, telling Plaintiff to file a new application. The ALJ did nothing to dispel the distinct impression, notable even on the cold transcript, that he intended to deny Plaintiff's claim for benefits because he was annoyed with her lawyer.[3]

---

[3]     It is noted that, at the end of the hearing, upon witnessing the exchanges between the ALJ and Mr. Russell, Plaintiff took the unusual step of asking if she could speak to the ALJ outside

(continued...)

Undoubtedly, Mr. Russell could have done more to protect his client's rights and to assist her case. However, the issue is not whether counsel's performance was above reproach, but whether the ALJ fulfilled his responsibility to address Plaintiff's application based on an adequate record and to provide her a full and fair hearing. The evidence demonstrates that he did not.

When an ALJ demonstrates an inability to handle the case in a fair and impartial manner, the matter should be referred to another ALJ. Ventura, 55 F.3d at 905. Therefore, upon remand, this case should be referred to another ALJ for further proceedings.

For these reasons, it is recommended that the motion for summary judgment submitted on behalf of the defendant (Docket No. 14) be denied. It is further recommended that the motion for summary judgment submitted on behalf of the plaintiff (Docket No. 12) be granted and that this case be remanded to the Commissioner of Social Security for further consideration.

Within thirteen (13) days of being served with a copy, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

> Respectfully submitted,
>
> s/Robert C. Mitchell
> ROBERT C. MITCHELL
> United States Magistrate Judge

Dated: June 30, 2006

---

[3](...continued)
the presence of her counsel. (R. 124-25.) The ALJ properly denied this request as inappropriate, but the fact that Plaintiff made it suggests that she wished to distance herself from her lawyer.